**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBIN SANTIAGO RAMOS, )<br><br>           Petitioner, )<br><br>v. )<br><br>KONSTANTINOS DIAMANTAKOS, )<br>Field Office Director of ICE Burlington Office, )<br>PATRICIA HYDE, Field Office Director, )<br>TODD LYONS, Acting Director U.S. )<br>Immigrations and Customs Enforcement, )<br>KRISTI NOEM, U.S. Secretary )<br>of Homeland Security, )<br>PAMELA J. BONDI, Attorney General of the )<br>United States, and )<br>DONALD J. TRUMP, President of the United )<br>States, )<br><br>           Respondents. ) | Case No. _____<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**<u>INTRODUCTION</u>**

1.  Petitioner Robin Santiago Ramos is a citizen of Ecuador. He was born on September 17, 2006. He resides in Biddeford, Maine.

2.  Petitioner entered the United States on September 16, 2023. On April 18, 2024, the Department of Homeland Security ("DHS") commenced "full" removal proceedings under 8 U.S.C. § 1229a against Petitioner. Once commenced, § 1229a removal proceedings "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id*. § 1229a(a)(3). Petitioner is set for a Master Hearing at the Chelmsford Immigration Court on April 13, 2028.

1

Therefore, Petitioner remains in removal proceedings in Immigration Court pursuant 8 U.S.C. § 1229a.

3. On January 22, 2026, officers of Immigration and Customs Enforcement ("ICE"), a sub-agency of DHS, arrested Petitioner while he was returning home from work in Biddeford, Maine.

4. On information and belief, Petitioner is physically detained in ICE's custody at 1000 District Ave, Burlington, MA 01803, within the District of Massachusetts.

5. Petitioner entered the United States as an Unaccompanied Alien Child ("UAC"). After Petitioner arrived to the United States border, DHS placed Petitioner in the custody of a shelter that was operated by the Office of Refugee Resettlement ("ORR"). ORR is a sub-agency of the United States Department of Health and Human Services ("HHS"). ORR then released Petitioner pursuant to § 462 of the Homeland Security Act of 2002 and § 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008. When Respondent arrived to the United States border, DHS never detained Respondent under 8 U.S.C. § 1225. Rather, DHS released Petitioner into the United States pursuant to 8 U.S.C. § 1232.

6. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ('TVPRA'), Pub. L. No. 110-457, 122 Stat. 5044 (2008), requires the Department of Homeland Security ('DHS') to transfer an unaccompanied noncitizen minor to the custody of the Secretary of Health and Human Services ('HHS') within 72 hours of determining that the minor is unaccompanied, absent 'exceptional circumstances.'" *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1140 (9th Cir. 2018) (quoting (8 U.S.C. § 1232(b)(3)). "ORR then must ensure that the minor is 'promptly placed in the least

2

restrictive setting that is in the best interest of the child.'" *Id*. (quoting § 1232(c)(2)(A)). "**In 1997, the United States entered into a settlement agreement with a plaintiff class in *Flores v. Sessions*, providing a minor in an ORR facility the right to a bond hearing before an immigration judge to challenge the agency's initial determination that the minor is a danger to the community**." *Id*. (citing *Flores v. Sessions*, 862 F.3d 863, 879 (9th Cir. 2017)) (emphasis added). When DHS transfers an unaccompanied alien child to the Office of Refugee Resettlement, the transfer is made pursuant to 8 U.S.C. § 1232(b)(3) (TVPRA § 235), not under 8 U.S.C. § 1226(a) or 8 U.S.C. § 1182(d)(5)(A).

7.  Prior to his arrest by DHS, Petitioner diligently attended all of his Immigration Court hearings and check-ins with Immigration and Customs Enforcement. § 1229a removal proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3). Removal proceedings contain certain procedural protections required by the applicable statutes and regulations. The person attends hearings before an Immigration Judge and, if he or she is found removable, may apply for various forms of relief from removal. The decision of the Immigration Court is subject to appellate review by the Board of Immigration Appeals (the "BIA") and then via a petition for review to a U.S. Court of Appeals. While the removal proceeding is pending, people without a criminal record or involvement in terrorism are constitutionally entitled to a bond hearing with certain procedural protections, which may result in their release for the pendency of the proceeding. *See* 8 U.S.C. § 1226; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (for § 1226(a) detainees, due process requires a bond hearing in which

government bears burden of proof to show flight risk or dangerousness); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment of same).

8. Based on information and belief, DHS has detained Petitioner pursuant to 8 U.S.C. § 1225. However, the statute upon which the Respondents have relied to justify the Petitioners' detention—8 U.S.C. § 1225—is effectively a border processing statute that applies to noncitizens "seeking to enter the country." *Jennings v. Rodriguez*, 583 U.S. 281 (2018) ("That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible") (citing 8 U.S.C. § 1225). Whereas 8 U.S.C. § 1225 applies to noncitizens *seeking* to enter the United States, "**§ 1226 applies to aliens already present in the United States**." *Id*. at 289 (emphases added). "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id*. 8 U.S.C. § 1225 does not—and did not at any point—apply to Petitioner because DHS classified him as a UAC pursuant to 8 U.S.C. § 1232 and released Petitioner into the custody of HHS, and therefore into the United States, pursuant to 8 U.S.C. § 1232.

9. DHS's release of Petitioner into the United States from the border, into HHS custody, constituted an "entry" within the meaning of *Zadvydas v Davis*, 533 U.S. 678 (2001). Because Petitioner has "effected an entry" into the United States as a UAC, and has been present in the United States for longer than two years, it is therefore unlawful for the Respondents to detain him without a bond hearing under 8 U.S.C. § 1225.

4

10. Because Respondents have unlawfully detained Petitioner under 8 U.S.C. § 1225, he will be unlawfully denied a bond hearing in which the government has the burden of proof in the Immigration Court, as well as certain forms of relief from removal that would be potentially available in the Immigration Court. *See, e.g., Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that "Based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.").

11. Petitioner's detention under 8 U.S.C. § 1225 will deprive Petitioner of the right to a bond hearing in which the government bears the burden of proof. Noncitizens detained under § 1225 are not eligible for bond. The First Circuit held in *Hernandez-Lara* that the Fifth Amendment's Due Process clause requires the government to provide detained noncitizens awaiting removal proceedings a bond hearing. *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Flores v. Sessions*, 862 F.3d 863, 879 (9th Cir. 2017). The government must prove the noncitizen is a danger by clear and convincing evidence, or flight risk by preponderance of evidence. *See id.*  If the government cannot meet its burden, it must offer bond or conditional parole. *See id*. The decision expanded the due process rights of noncitizens. The court also asserted that the decision ameliorates the "substantial societal costs" of unnecessary detention. *See id*.

12. Petitioner's wrongful detention under 8 U.S.C. § 1225 also violates his right to procedural due process. To determine whether a form of civil detention violates a detainee's due process rights under the Fifth Amendment, courts apply the three-part balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under that test, a

court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. *See also Hernandez-Lara*, 10 F.4th at 27-28 (analyzing procedural due process challenge to the detention of noncitizen held pursuant to Section 1226(a) using the *Mathews* test). "'Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that Clause protects.'" *Zadvydas v Davis*, 533 U.S. 678 (2001) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). In this case, these factors, in conjunction with the Petitioner's SIJS, militate in favor of ordering the immediate release of the Petitioner. *See, e.g., Inlago Tocagon v. Moniz*, No. 25-CV-12453-MJJ, 2025 WL 2778023, at *4 (D. Mass. Sept. 29, 2025) (finding petitioner's "private interest in 'freedom from imprisonment' is strong, given his I-360 petition was granted"); *Doe v. Moniz*, No. 1:25-CV-12094-IT, 2025 WL 2576819, at *11 (D. Mass. Sept. 5, 2025) (concluding that "the *Mathews* factors weigh in favor of Petitioner, and the court finds that his detention without a bond hearing violates his Due Process rights" because "the public has no interest in the detention without bond of someone against whom no criminal charges are pending and who is an active member in his community.").

13. In *Guerrero Orellana v. Moniz*, Judge Saris ruled that "that § 1225(b)(2)(A) does not authorize mandatory detention pending removal proceedings for noncitizens who enter the United States without inspection and are later apprehended while residing within the

6

country." *Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 3687757, at *7 (D. Mass. Dec. 19, 2025). Judge Saris also granted class certification to the following noncitizens:

> All people who are arrested or **detained in Massachusetts**, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or **who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts**, where:
>
> (a) the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);
>
> (b) for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry or after continuous detention upon arrival;
>
> (c) the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);
>
> (d) the person is not subject to post-final order detention under 8 U.S.C. § 1231; and
>
> (e) the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

*Id*. at *10. **Petitioner contends that he is a member of the *Guerrero Orellana* class because he is "detained in Massachusetts" *and* "subject to the jurisdiction of an Immigration Court located in Massachusetts," videlicet the Chelmsford Immigration Court**. Judge Saris issued declaratory judgment for *Guerrero Orellana* class members: "that the members of the certified class are not subject to detention under 8 U.S.C. § 1225(b)(2). Defendants' policy of subjecting members of the certified class to detention under 8 U.S.C. § 1225(b)(2)(A) without consideration for bond and a custody

7

redetermination (i.e., bond) hearing is unlawful and violates the Immigration and Nationality Act and its regulations." *Id*.

14. In *Bautista v. Santacruz*, Judge Sykes of the Central District of California granted the petitioners' class certification request based on the claim "that the DHS Policy violates the INA and Due Process." *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). "The class certified is defined as follows: • Bond Eligible Class: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id*. Here, Petitioner contends that he falls within the *Bautista* class.

15. There is no statutory requirement for Petitioner to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not required by statute in this context."). Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where statutory exhaustion is not required, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

## **VENUE AND JURISDICTION**

16. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question). This Court has jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or

laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although a federal district court does not generally have subject-matter jurisdiction to review orders of removal issued by an immigration court, *see* 8 U.S.C. § 1252(a)(1), (g), it does have jurisdiction over habeas petitions. 28 U.S.C. § 2241(a); *see* U.S. CONST. art. I, § 9, cl. 2 (providing that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it").

17. **Venue is proper because Respondents have detained Petitioner in the District of Massachusetts.**

18. Respondent Konstantinos Diamantakos is the Field Office Director of the U.S. Immigration and Customs Enforcement office in Burlington, Massachusetts, and is Petitioner's immediate custodian. Generally, "in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 124 S. Ct. 2711, 2718, 159 L. Ed. 2d 513 (2004).

19. Respondent Patricia Hyde is the New England Regional Field Office Director for U.S. Immigration and Customs Enforcement.

20. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

21. Respondent Kristi Noem is the U.S. Secretary of Homeland Security.

22. Pamela J. Bondi is the Attorney General of the United States.

23. Respondent Donald J. Trump is the President of the United States.

24. All respondents are named in their official capacities.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of 8 U.S.C. 1226(a) and Associated Regulations

25. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

26. Under § 1226(a) and its associated regulations, Petitioner is entitled to a bond hearing. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

27. Petitioner has not been, and will not be, provided with a bond hearing in which DHS has the burden of proof, as required by *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

28. Petitioner's continuing detention is therefore unlawful.

### COUNT TWO
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide Substantive Due Process of Law)

29. On information and belief, Petitioner is currently being detained and subjected to Expedited Removal in violation of his constitutional right to due process of law.

30. Petitioner cannot be detained for, or subjected to, Expedited Removal because he has been continuously present in the United States for greater than two years.

31. The Expedited Removal statute largely "precludes judicial review," and therefore challenges to "confinement and removal" under that statute fall within the "core" of the writ of habeas corpus. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1006-07 (2025); *cf. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, (2020) (holding attempt "to obtain additional administrative review of his asylum claim" after Expedited Removal order was outside the "core" of habeas relief). However, *Thuraissigiam* is distinguishable from this case because in that case, the petitioner "was apprehended just 25 yards from the border"

10

and was never released from Border Protection custody. *See Thuraissigiam*, 591 U.S. at 107. Moreover, in *Thuraissigiam*, DHS "detained [the petitioner for expedited removal," whereas in this case, expedited removal does not apply to Petitioner because he resided in the United States for more than two years before his detention. *Thuraissigiam* is further inapposite because in that case, the petitioner did not seek release from DHS custody, but rather a "vacatur of his 'removal order' and 'an order directing [the Department] to provide him with a new...opportunity to apply for asylum and other relief from removal.'" *Id*. at 117-18. In this case, however, Petitioner solely requests the Court to review the constitutionality of his detention by Respondents.

32. Accordingly, to the extent 8 U.S.C. § 1252(e)(2) purports to preclude habeas review of whether Petitioner is ineligible for detention and removal via Expedited Removal due to the length of his presence in the United States, that limitation violates the Suspension Clause and is void and without effect.

33. Indeed, if there were no judicial review whatsoever of the immigration agencies' determinations that people have been present for less than two years, then the immigration agencies would be free to find that essentially any arrested noncitizen without status is subject to Expedited Removal, in direct violation of the procedures and safeguards required for removal proceedings by the laws and Constitution of the United States.

34. Even assuming Petitioner is eligible for detention for removal proceedings, he has not been provided any opportunity to receive a bond hearing to which he is entitled during any such proceedings pursuant to *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). The only current basis for Petitioner's detention and potential

deportation—Expedited Removal—is one that categorically does not apply to him.

35. Several judges comprising the District Court for the District of Massachusetts have considered the applicability of 8 U.S.C. § 1226(a) (rather than Section 1225) in these circumstances, the right of a similarly-situated detainee's right to receive a bond hearing, and the soundness of the BIA's position in *Matter of Yajure Hurtado.* These judges have all found Section 1226(a) to apply, concluded that access to a bond hearing was required, and, either expressly or implicitly, held the BIA's contrary view to be incorrect and unlawful. *See Rocha v. Hyde,* 2025 WL 2807692, at *2 (D. Mass. Oct. 2, 2025) (Burroughs, J.) ("[a]s Respondents acknowledge in their opposition, "[o]ther sessions of this court, as well as other courts across the country, have determined that 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1225(b)(2), appl[ies] to aliens arrested and detained within the United States, even if such alien meets the definition of an applicant for admission as an alien present in the United States who has not been admitted"); *Mendoza v. Hyde*, C.A. No. 25-12815 (D. Mass. Oct. 1, 2025) (Kobick, J.) (not available in Westlaw) ("Mendoza is not an applicant for admission subject to mandatory detention under Section 1225(b). Noncitizens subject to detention under § 1226(a) have the right to request a bond hearing before an Immigration Judge, at which the government bears the burden to prove that continued detention is justified.") (internal quotation marks omitted); *Reynoso Tejada v. Moniz*, C.A. No. 25-12731 (D. Mass. Oct. 1, 2025) (Sorokin, J.) (not available in Westlaw) (granting habeas petition, including rejection of government's argument that petitioner was detained under § 1225); *De Sousa v. Hyde,* C.A. No. 25-12736 (Murphy, J.) (D. Mass. Oct. 1, 2025) (not available in Westlaw) (ordering that "Petitioner receive a bond hearing under 8 U.S.C. s. 1226"); *Inlago Tocagon v. Moniz,* 2025 WL 2778023 (D.

Mass. 2025) (Joun, J.); *Doe v. Moniz*, 2025 WL 2576819, at \*5) (D. Mass. 2025) (Talwani, J.); *Guerrero Orellana v. Moniz,* 2025 WL 2809996 (D. Mass. 2025) (Saris, J.); *Velasco-Luis v. Hyde*, C.A. No. 25-12747 (D. Mass. Oct. 6, 2025) (Stearns, J.) (not available in Westlaw) (adopting rationale of *Guerrero Orellana v. Moniz, supra)*. Nearly every court nationwide to have considered these issues has come to the same conclusions. *See Guerrero Orellana v. Moniz, supra,* at \*5 (collecting cases).

36.      "[A] district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits." *Gomes v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 132, 144 (D.N.H. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972)). Petitioner's continuing detention is unlawful; therefore, Petitioner's immediate release from Respondents' custody is the proper remedy in this case. A habeas court may order a Petitioner's immediate release "when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (holding that "the district court acted within its power when it considered whether petitioner was entitled to release on bail.").

**COUNT THREE**
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide Procedural Due Process of Law)**

37. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

38. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V.

13

39. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

40. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

41. "'[T]he indefinite detention without access to bond or bail of any person in the United States violates due process.'" *Tenemasa-Lema v. Hyde*, No. CV 25-13029-BEM, 2025 WL 3280555, at *1 (D. Mass. Nov. 25, 2025) (quoting *Castaneda v. Souza*, 810 F.3d 15, 44 (1st Cir. 2015) (Torruella, J., concurring)). "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without

trial is the carefully limited exception.'" *Id*. at *8 (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021)). "[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *6 (D. Mass. Nov. 7, 2025) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). In this case, as in *Tenemasa-Lema* and *Rincon*, Petitioner has developed deep ties to the United States since his arrival to this country.

42. Petitioner was arrested inside the United States and is being held without being provided any individualized detention hearing.

43. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) **Issue a Temporary Restraining Order prohibiting Respondents from transferring the Petitioner outside the District of Massachusetts**;

(3) Issue an Order to Show Cause pursuant to 28 U.S.C. § 2243 ordering Respondents to show cause why this Petition should not be granted within three days;

(4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately; and

(6) Grant any further relief this Court deems just and proper.

Dated: January 23, 2026                    Respectfully submitted,


                                           */s/ Shantanu Chatterjee*
                                           Shantanu Chatterjee, Esq.
                                           MA BBO No. 698677
                                           New England Immigration Law
                                           88 Broad Street, Suite 402
                                           Boston, MA 02110
                                           (413)-776-4817 (tel.)
                                           shaan@newenglandimmigrationlaw.com
                                           *Counsel for Petitioner*

16